## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MELANIE FELICIANO, | Case No.: |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA CORPORATION | **JURY TRIAL DEMANDED** |
| Defendant. | |

### COMPLAINT

Melanie Feliciano ("Plaintiff" or "Ms. Feliciano") brings this action on an individual basis, against Bank of America Corporation ("BANA") for its violations of the Electronic Funds Transfer Act ("EFTA") 15 U.S.C. § 1693, *et. seq.*, and states as follows:

### INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is

1

intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.      Further, in the advent of the digital economy and banking system, electronic funds transfers have become commonplace.

4.      Electronic funds transfers allow for the transfer of funds via an electronic terminal, telephonic instruction, or computer or magnetic tape.

5.      At all relevant times, an unknown third party, initiated and received the benefit of funds from Plaintiff's bank account with Bank of America, which were electronically transferred from Plaintiff's bank account with Bank of America without Plaintiff's authorization, consent, or awareness.

6.      Accordingly, Plaintiff brings a claim against Defendant for failing to fully and properly reinvestigate Plaintiff's dispute and review all relevant information provided by Plaintiff, in violation of the Electronic Funds Transfer Act.

7.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendant for its willful and/or negligent violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq*., as described herein.

## PARTIES

8.     Melanie Feliciano ("Plaintiff" or "Ms. Feliciano") is a natural person residing in Spartanburg, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1693a(6).

9.     Plaintiff is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

10.     At all relevant times, Plaintiff had an asset account in her name with Defendant (hereinafter, "Plaintiff's BANA Account").

11.     At all relevant times, Plaintiff's BANA Account was established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

12.     At all relevant times, Plaintiff's BANA Account was an "account" and constituted an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1).

13.     Defendant Bank of America ("BANA") is a national bank with its headquarters in Charlotte, North Carolina and is authorized to conduct business in the State of South Carolina, including within this District.

14.     At all relevant times, Defendant was a bank that held Plaintiff's BANA Account.

15.     At all relevant times, Defendant is a "financial institution" as that term is defined by 15 U.S.C. § 1693a(9).

16.     At all relevant times, Defendant is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

## JURISDICTION AND VENUE

17.     This action arises out of Defendant's violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et. seq.*

18.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m, which allows claims under the Electronic Funds Transfer Act to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Electronic Fund Transfer Act ("EFTA")

20.     In 1978, Congress passed the Electronic Fund Transfer Act (EFTA) (15 U.S.C. § 1693 *et. seq.*) to protect individual consumers from fraudulent, or unauthorized electronic fund transfers from their bank accounts.

21.     The stated purpose of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et. seq.*, ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).   EFTA's "primary objective…is the provision of individual consumer rights." *Id*.   Moreover, the language of the EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability.  *Id*., at 1693d-1.

22.     The EFTA is implemented through Regulation E, 12 CFR 1005.

23.     Regulation E defines an "Account" for purposes of the act to include a "[c]hecking…account held by a financial institution…established primarily for personal, family, or household purposes." 12 CFR 1005.2(b)(1).

24.     An "electronic fund transfer" ("EFT") includes "any transfer of funds initiated through an electronic terminal, telephone, computer, or magnetic tape for

the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account."  12 CFR 1005.2(b)(3).

25.    An "Unauthorized electronic fund transfer" is an EFT from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 CFR 1005.2.

26.    A consumer who provides notice to their financial institution of an unauthorized transfer of funds from their account within "60 days after the transmittal of the periodic statement on which the unauthorized transfer first appears" has no liability for the transfer.  12 CFR 1005.6.1.

27.    A financial institution that fails to apply this limit of liability properly violates the EFTA.

28.    Additionally, a financial institution that fails to promptly investigate in good faith, fails to conduct a "reasonable" investigation, or fails to notify the consumer of the results of an investigation within 3 business days violates the EFTA.

29.    In this investigation, the financial institution bears the burden of proving that the alleged Unauthorized EFT was, in fact, authorized.

30.    The failure by a financial institution (or any person) to comply with any provision of the EFTA makes the institution liable for:

        (a)     Any actual damage sustained by the consumer of the failure;

        (b)     In an individual action, damages of up to $1,000; and,

        (c)     Costs and attorney's fees.

15 U.S.C. § 1693m.

31.    Additionally, 15 U.S.C. § 1693f(e) provides that the consumer's damages shall be trebled "in any action under 1693m…if the Court finds that":

        (a)     The financial institution did not provisionally recredit a consumer's account within ten days, *and* the financial institution (1) did not make a good faith investigation of the alleged error[1], or (2) did not have a reasonable basis for believing that the consumer's account was not in error; or

        (b)     The financial institution knowingly and willfully concluded that the consumer's account was not in error when such a conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation.

---

[1] "Errors" includes an unauthorized transfer. 12 CFR 1005.11.

32. The financial institution must also provide notice of the results of its investigation within 3 business days of completing it. 12 CFR 1005.11.

33. A financial institution that fails to apply the limitations on liability property to an unauthorized transfer reported within sixty days is liable for recrediting the amount of the transfer as well as actual damages, additional damages of up to $1,000.00, costs and attorney's fees.

34. Additionally, when a financial institution does not make a good faith investigation of the error, concludes that an unauthorized transfer was "authorized" without reasonable basis, knowingly and willfully concludes there is "no error," is liable for treble damages.

35. Claims under the EFTA and regulation E are additional to other remedies that may be available to a consumer.

**Money Has Been Stolen from Plaintiff's BANA Account**

36. In or around April 2023, a BANA representative contacted Plaintiff to confirm she had authorized a suspicious charge with Walmart.com. Plaintiff did not recognize the charge, had not authorized a charge with Walmart.com and told the representative the same.

37.     The BANA representative told the Plaintiff the transaction would be rejected as the product of suspected fraud and that her current debit card would be cancelled, and a new debit card would be issued.

38.      Plaintiff paid fifteen dollars ($15.00) to expedite the delivery of her new debit card.

39.     On or about April 21, 2023, when she hadn't received the new debit card after about ten (10) days, Plaintiff visited a local BANA branch and spoke with the branch manager to follow up on the status of her new debit card.

40.     During her visit, she informed the branch manager that she had recently been the victim of fraud or suspected identity theft and that she was supposed to receive a new debit card.

41.     The BANA branch manager printed approximately thirty (30) pages of transaction history and upon review, Plaintiff was shocked to see that there were a number of transactions that she did not know about and had not otherwise authorized.

42.     There were hundreds of electronic funds transfers that Plaintiff had not authorized.

43.     Upon review, Plaintiff noted that the majority of the unauthorized electronic funds transfers were to approximately four different entities.

44.    Specifically, there were unauthorized electronic funds transfers to AMZN MKTP, Chumbia Casino, Univerkind ShenZhen, and Celebratesal Luohe ("Unauthorized Merchants").

45.    Plaintiff had not previously conducted any business with the Unauthorized Merchants.

46.    Plaintiff had not consented to any electronic funds transfer to AMZN MKTP.

47.    Plaintiff had not consented to any electronic funds transfer to Chumbia Casino.

48.    Plaintiff had not consented to any electronic funds transfer to Univerkind ShenZhen.

49.    Plaintiff had not consented to any electronic funds transfer to Celebratesal Luohe.

50.    Plaintiff did not provide consent to BANA to electronically transfer funds from Plaintiff's BANA Account to AMZN MKTP.

51.    Plaintiff did not provide consent to BANA to electronically transfer funds from Plaintiff's BANA Account to Chumbia Casino.

52.    Plaintiff did not provide consent to BANA to electronically transfer funds from Plaintiff's BANA Account to Univerkind ShenZhen.

53.     Plaintiff did not provide consent to BANA to electronically transfer funds from Plaintiff's BANA Account to Celebratesal Luohe.

54.     Plaintiff did not provide consent to any unknown third party to electronically transfer funds from Plaintiff's BANA Account to AMZN MKTP.

55.     Plaintiff did not provide consent to any unknown third party to electronically transfer funds from Plaintiff's BANA Account to Chumbia Casino.

56.     Plaintiff did not provide consent to any unknown third party to electronically transfer funds from Plaintiff's BANA Account to Univerkind ShenZhen.

57.     Plaintiff did not provide consent to any unknown third party to electronically transfer funds from Plaintiff's BANA Account to Celebratesal Luohe.

**Plaintiff Disputes the Unauthorized Funds Transfers with Defendant in April and May 2023**

58.     On or about April 21, 2023, Plaintiff, with the assistance of the BANA branch manager, disputed the unauthorized electronic funds transfers.

59.     Specifically, Plaintiff disputed any electronic funds transfers that were made from Plaintiff's BANA Account to the Unauthorized Merchants.

60.    Plaintiff provided Defendant with written notice of the circumstances as to why the electronic funds transfers by an unknown third party to the Unauthorized Merchants were unauthorized as follows:

(a)    Plaintiff never authorized the electronic funds transfer from Plaintiff's BANA Account;

(b)    Plaintiff never provided the unknown third party with permission, consent, or authority to electronically transfer funds from Plaintiff's BANA Account; and,

(c)    Plaintiff did not initiate a transaction with the Unauthorized Merchants at any time.

61.    On or about May 12, 2023, Plaintiff submitted another dispute letter to Defendant to follow up on her dispute of the unauthorized electronic fund transfers.

62.    On May 15, 2023, Plaintiff went to a local police department and filed a police report.  The police report was faxed to Defendant to the fax number provided by the BANA branch manager.

**BANA Denies Plaintiff's Dispute of Unauthorized Electronic Funds Transfers in May 2023**

63.    On May 30, 2023, Defendant electronically transmitted dispute results to Plaintiff's BANA phone application.  Defendant denied Plaintiff's disputes to date.

64.    Defendant failed to conduct a sufficient investigation relative to the disputed unauthorized electronic funds transfers.

65.    Defendant failed to sufficiently report the results of any purported investigation it allegedly conducted relative to the disputed unauthorized electronic funds transfers.

66.    Defendant failed to credit Plaintiff the amount of the unauthorized electronic funds transfers.

**Plaintiff Disputes the Unauthorized Funds Transfers with Defendant in June 2023**

67.    Plaintiff was completely flabbergasted at BANA's denial of her dispute.  Plaintiff struggled to understand how it is that BANA came to the conclusion that the disputed unauthorized electronic funds transfers were anything other than the product of fraud and/or identity theft.

68.    Plaintiff was expecting that the funds would have been returned to Plaintiff's BANA Account – she needed the money to care for her family.

69.    On or about May 30, 2023, Plaintiff went back to the local BANA branch and once again spoke with the branch manager.

70.    Plaintiff complained that BANA's dispute reinvestigation was unreasonable.

71.     Together with the BANA branch manager, Plaintiff called the BANA Claims Department.

72.     Plaintiff spoke with a Claims Department representative and again disputed the unauthorized electronic funds transfers to the Unauthorized Merchants and asked BANA to reinvestigate.

73.     Plaintiff was then transferred to the Claims Department Supervisor. Plaintiff spoke with the Claims Department Supervisor and again disputed the unauthorized electronic funds transfers to the Unauthorized Merchants and asked BANA to reinvestigate.

74.     During that call, the BANA Claims Department Supervisor reviewed Plaintiff's BANA Account and noted that someone had tried to access Plaintiff's BANA Account approximately 237 times.

75.     The BANA Claims Department Supervisor identified the individual as "King J," Plaintiff did not recognize the name.

76.     The BANA Claims Department Supervisor agreed to open a new investigation into Plaintiff's dispute of the unauthorized electronic funds transfers to the Unauthorized Merchants.

77.     On June 14, 2023, Plaintiff filed a complaint regarding the unauthorized electronic funds transfers from Plaintiff's BANA Account with the Consumer Financial Protection Bureau ("CFPB").

**BANA Denies Plaintiff's Dispute of Unauthorized Electronic Funds Transfers in June 2023**

78.     On June 29, 2023, Defendant electronically transmitted dispute results to Plaintiff's BANA phone application.  Defendant denied Plaintiff's disputes to date.

79.     Specifically, Defendant denied Plaintiff's May 30, 2023 dispute because more than sixty days had passed.

80.     Defendant failed to conduct a sufficient investigation relative to the disputed unauthorized electronic funds transfers.

81.     Defendant failed to sufficiently report the results of any purported investigation it allegedly conducted relative to the disputed unauthorized electronic funds transfers.

82.     Defendant failed to credit Plaintiff the amount of the unauthorized electronic funds transfers.

**Plaintiff Disputes the Unauthorized Funds Transfers with Defendant in June 2023**

83.   Plaintiff was shocked to see that once again BANA had denied her dispute.  Plaintiff could not conceive of how BANA concluded that the disputed unauthorized electronic funds transfers were anything other than the product of fraud and/or identity theft, especially given BANA's own admission that they had evidence in their own records of some unknown individual trying to access Plaintiff's BANA Account repeatedly.

84.   Further, BANA knew that in April 2023, someone made an unauthorized electronic funds transfer to Walmart.com and concurred with Plaintiff that it was fraud and stopped the transaction.

85.   Plaintiff was expecting that the funds would surely have been returned to Plaintiff's BANA Account and was completely devastated to learn that her disputes were falling on deaf ears.

86.   On or about June 29, 2023, Plaintiff went back to the local BANA branch and once again spoke with the branch manager.

87.   Plaintiff complained that BANA's dispute reinvestigation was unreasonable.

88.   With the assistance of the BANA branch manager, Plaintiff submitted another dispute to BANA of the unauthorized electronic funds transfers to the Unauthorized Merchants via the BANA phone application.

**BANA Denies Plaintiff's Dispute of Unauthorized Electronic Funds Transfers in July 2023**

89.     On July 19, 2023, Defendant electronically transmitted dispute results to Plaintiff's BANA phone application.  Defendant denied Plaintiff's disputes to date.

90.     Specifically, Defendant denied Plaintiff's June 29, 2023 dispute because more than sixty days had passed.

91.     Defendant failed to conduct a sufficient investigation relative to the disputed unauthorized electronic funds transfers.

92.     Defendant failed to sufficiently report the results of any purported investigation it allegedly conducted relative to the disputed unauthorized electronic funds transfers.

93.     Defendant failed to credit Plaintiff the amount of the unauthorized electronic funds transfers.

**Plaintiff Disputes the Unauthorized Funds Transfers with Defendant in July 2023**

94.     Plaintiff could not believe that once again BANA had denied her dispute.

95.     Plaintiff was particularly distressed that BANA had once again failed to conduct a reasonable investigation of her disputes.  Especially considering that

after BANA issued to Plaintiff a new debit card, the unauthorized electronic funds transfers continued, but when Plaintiff disputed those transactions, BANA returned the funds to Plaintiff's BANA Account right away.

96.     Plaintiff was expecting that the funds would surely have been returned to Plaintiff's BANA Account and was completely in disbelief that BANA had once again refused to credit her the stolen funds.

97.     Plaintiff was so upset at the thought that BANA had failed to protect Plaintiff's funds that were in Plaintiff's BANA Account – funds that BANA was charged to protect in the first place.

98.     Plaintiff could not fathom that not only did BANA fail to protect her funds, but that BANA then refused to make it right.

99.     On or about July 20, 2023, Plaintiff contacted BANA CEO, Stacy B. Brandon. Plaintiff called and left Ms. Brandon a voicemail.

100.     On or about July 20, 2023, Ms. Brandon returned Plaintiff's call. During that call, Plaintiff disputed the unauthorized electronic funds transfers to the Unauthorized Merchants and explained the numerous times that BANA had failed to conduct a reasonable reinvestigation of Plaintiff's disputes.

101.     Ms. Brandon asked Plaintiff to email supporting documentation to her.

102.   On or about July 21, 2023, Plaintiff emailed Ms. Brandon the supporting documents.

103.   To date, Ms. Brandon has not responded to Plaintiff's email or otherwise to her dispute.

104.   To date, Defendant has not conducted a sufficient investigation relative to the unauthorized electronic funds transfers disputed by Plaintiff.

105.   To date, Defendant has not sufficiently reported the result of any putative investigation it conducted relative to the unauthorized electronic funds transfers disputed by Plaintiff.

106.   To date, Defendant has not issued Plaintiff credit for the disputed unauthorized electronic funds transfers from Plaintiff's BANA Account.

107.   Defendant failed to conduct any reasonable investigation.

108.   Defendant did not make a good faith investigation of the unauthorized electronic funds transfers.

109.   Defendant did not have a reasonable basis for believing that the electronic funds transfers from Plaintiff's BANA Account were not fraudulent.

110.   Defendant was unreasonable in concluding that Plaintiff made the disputed electronic funds transfers with the information then available to it.

111.    Defendant knowingly and willfully concluded that the electronic transfers from Plaintiff's BANA Account were authorized by Plaintiff when such a conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

112.    Presently, Plaintiff remains without the money that was transferred without her authority from Plaintiff's BANA Account to the Unauthorized Merchants.

113.    Defendant has imposed liability on Plaintiff for the entirety of the money transferred without her authority from Plaintiff's BANA Account to the Unauthorized Merchants.

114.    Plaintiff is neither legally responsible nor obligated to pay for the money transferred without her authority from Plaintiff's BANA Account to the Unauthorized Merchants.

115.    At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

116.    At all times pertinent hereto, the conduct of Defendant, as well as that of its respective agents, servants, and/or employees, was intentional, willful,

reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

117.   The Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the EFTA to lower its costs.  Accordingly, the Defendant's violations of the EFTA are willful.

118.   As a direct and proximate result of the foregoing, Plaintiff suffered out of pocket damages of at least $3,000.00 from her depository account, a sum of money that, for Plaintiff and her family, is material.

119.   Plaintiff is a school bus monitor, the money stolen from her is material to the well-being of her family.

120.   Specifically, Plaintiff was saving the money to put it towards a security deposit for an apartment she was planning to lease and move into with her children.

121.   Due to Defendant's failure to conduct a reasonable investigation and credit the stolen funds back to Plaintiff's BANA Account, Plaintiff could not afford the security deposit and ultimately lost the apartment that she intended to move into with her children.

122.   Due to Defendant's failure to conduct a reasonable investigation and credit the stolen funds back to Plaintiff's BANA Account, Plaintiff was forced to move into a different apartment which was more expensive.  Further, Plaintiff was

forced to borrow funds from her mother to afford her rent for approximately two months.

123.   As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her depository funds; out of pocket losses; the expenditure of time and money disputing and trying to alert the Defendant to an unauthorized electronic fund transfer; the expenditure of labor and effort disputing and trying to have her funds returned; and emotional distress including the mental and emotional pain, anguish, fear, and worry of continued unauthorized electronic fund transfers.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. §§ 1693, *et. seq.* (EFTA)
### Violation of the Electronic Fund Transfer Act and Regulation E for Failure to Comply with Error Resolution Procedures

124.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

125.   Defendant is a financial institution subject to the requirements of the EFTA.

126.   Plaintiff's Huntington Act at issue was established primarily for personal, family, or household purposes.  12 CFR 1005.2(b)(1).

127. Plaintiff notified Defendant in January 2023 of the error in Plaintiff's Huntington Account in the form of an unauthorized electronic fund transfer from the aforementioned account.

128. The aforementioned electronic fund transfer was an unauthorized electronic fund transfer as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

129. Defendant was required to initiate a good faith investigation upon notice.

130. Additionally, because the alleged error was an unauthorized EFT, Defendant bore (and bears) the affirmative burden of proof to establish that the EFT was authorized under 15 U.S.C. § 1693g(b). See also, 83 Federal Register 6364, 6382 (Feb. 12, 2018).[2]

131. Besides bearing the burden of proof for the investigation, Defendant was required to:

    (a)    Investigate in good faith and resolve the error within ten business days;

    (b)    Conduct a reasonable investigation;

---

[2] Absent the burden of proof, the obligation to act in good faith, and to back any determination by a reasonable basis in fact, any financial institution could simply conduct a cursory or conclusory "investigation," deny the claim, and avoid any loss to itself.

(c)     Support any finding by a reasonable basis for believing the consumer's account was not in error;

(d)     Report to the consumer the results of the investigation within three business days of completing it.  12 CFR 1005.11.

(e)     Provide documentary evidence supporting its position on reinvestigation, if challenged or requested by Plaintiff within ten days of Defendant's notification of its results.

132.   Defendant violated the EFTA by failing, after Plaintiff requested a reinvestigation or supporting information, to timely or properly provide the same.

133.   Defendant's actions were knowing and willful and in bad faith.

134.   Defendant's conduct was in violation of 15 U.S.C. § 1693f(a).

135.   Defendant's conduct was in violation of 15 U.S.C. § 1693f(d).

136.   As a direct and proximate result of the foregoing, besides any damages above and the cost of this action (all of which are available for any EFTA violation), Defendant is liable for treble damages pursuant to 15 U.S.C. § 1693f(e)(1) and (2).

137.   As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her depository funds; the expenditure of time and money disputing and trying to alert the Defendant to an unauthorized electronic fund transfer; the expenditure of labor and effort disputing

and trying to have her funds returned; and emotional distress including the mental and emotional pain, anguish, fear, and worry of continued unauthorized electronic fund transfers.

138.   As a result of each and every violation of the EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendant negligently and/or willfully violated the EFTA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the EFTA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the EFTA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 29th day of September 2023.

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
Consumer Attorneys
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715- 1750
E: dmccraw@consumerattorneys.com
*Attorneys for Plaintiff*
*Melanie Feliciano*